[S. F. No. 14463. In Bank.—May 13, 1932.]

BERT BOYD, Petitioner, v. CARLOS W. HUNTINGTON, as Director of the Department of Professional and Vocational Standards, etc., Respondent.

Annette Abbott Adams for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

Anthony J. Kennedy, *Amicus Curiae.*

THE COURT.—This is a proceeding in *mandamus* to compel the payment to petitioner by respondent, Director of the Department of Professional and Vocational Standards, of the sum of $300 alleged to be due him as secretary of the board of dental examiners for the month of September, 1931.

It appears from the record that petitioner was appointed a member of the board by the Governor of the state November 9, 1927, his commission stating he was appointed for the term prescribed by law, vice E. J. Wylie, term expired. He qualified as such member and was thereafter elected secretary of the board December 16, 1930. On August 13, 1931, the Governor appointed A. Zimmerman a member of the board, his commission reading "vice Bert Boyd, term expired". Thereafter Zimmerman qualified on August 18, 1931. The salary of the secretary of the board is $300 per month as fixed by such board pursuant to section 3 of the Dental Practice Act (Stats. 1915, p. 698), which also provides that the secretary shall be a member of the board.

Petitioner claims that as he was appointed November 9, 1927, for a term of four years, the attempted appointment on August 13, 1931, of Zimmerman in his place and stead was void, as his term of office would not expire until November 9, 1931. Petitioner further contends that by section 377i of the Political Code, the secretary need not be a member of the board and as he has not been removed as secretary he is entitled to his salary for the month of September. Respondent by his answer and return contends that the term of office of a member of the board of dental examiners is four years and runs with the office, and not from the date of appointment of the member; that the term of the office held by petitioner expired August 8, 1931, and thereafter his tenure was at the pleasure of the Governor; that the appointment of Zimmerman in his place as a member on

August 13, 1931, was legal and upon the latter's qualifying on August 18, 1931, petitioner ceased to be a member; that section 3 of the Dental Practice Act, which requires the secretary to be a member of the board, controls the general provision of the Political Code, section 377i, and when petitioner ceased to be a member of the board, he also ceased to be secretary thereof and was not therefore entitled to any salary as such for the month of September, 1931, or thereafter. In support of his claim, petitioner argues that as no particular date for the beginning or ending of the term of any member of said board was fixed by statute at the time of his appointment, the term being fixed for a given period of time only, such terms ran with, or were attached to the members of the board and did not run with and were not attached to the office. ■■■ The main question here involved, therefore, is whether under the Dental Act an appointee to the board of dental examiners is invested with a full term of four years from the time of his appointment without reference to the period of incumbency of his predecessors, or does the act prescribe that the term of office of dental examiner is a fixed term of four years, such term having specified fixed dates of beginning and ending so that the term begins and ends at corresponding dates of four years? In other words, does the term run with the incumbent or with the office? A solution of the question compels an examination of the statutes governing the dental board. By section 2 of the act of March 23, 1901 (Stats. 1901, p. 564), the board of dental examiners thereby created was to consist of seven members with the terms of four years each, except that two of the members of the board first appointed under that act were to hold their terms of office for a term of one year; two for a term of two years; two for a term of three years, and one for a term of four years and until their successors were duly appointed and qualified. By section 25 thereof it was provided that the act should take effect September 1, 1901. The plain intent of the legislature as evidenced by the provisions above recited was that the terms of office should rotate so that after the appointment of the first board the terms would not all commence or expire at the same time; and upon the expiration of each of said terms there would commence a new term of four years each, which would thereafter, in regular order, terminate respec-

tively upon the expiration of four years from their commencement, thus maintaining rotation in the terms. Under that act the Governor appointed seven members and assigned terms to them respectively, their commissions being dated May 28, 1901, though their terms did not commence to run until the act took effect, September 1st of that year. Thereafter a new and complete Dental Practice Act was enacted May 21, 1915 (Stats. 1915, p. 698), which went into effect August 8, 1915. By section 16 of that act all acts and parts of acts in conflict therewith were repealed and thereby the act of 1901 was superseded. By section 2 of that act, a board of dental examiners to consist of seven practicing dentists was thereby created, the members thereof to be appointed by the Governor, the terms of such members to be four years and until their successors were duly appointed and qualified. In that section it was further provided that: ''Their terms of office shall be so classified that the terms of not more than two members shall expire in any one year. The present members of the board of dental examiners of California appointed under the provisions of the laws of this state in force at the time that this law takes effect shall continue to serve and act as members of the said board, but under the provisions of this act, during their respective terms or until their successors are appointed and qualified. Vacancies occurring in the board of dental examiners shall be filled by appointment by the governor, within thirty days after such vacancy occurs.''

It thus appears upon the effective date of the last act mentioned there were created seven new terms, each of which would ordinarily be of four years' duration, but, by reason of the provision for classification and the provision for the continuance in service of the incumbents appointed under the prior act, there was to be an end to at least one and not more than two of these first seven terms in each of the first four years immediately following the effective date of the statute. The effective date being August 8, 1915, at least one and not more than two terms would expire on August 8, 1916, and be succeeded by a corresponding number of full terms of four years. The same would be true on August 8, 1917, 1918 and 1919, on which dates one or two terms would expire and be succeeded by a corresponding number of full terms.

After the act became effective, the Governor made appointments to the office at different periods and the appointees served for terms varying in duration. On December 14, 1922, the Governor appointed all seven incumbents members of the board for a term of four years "vice self, term expired". At this time the appointees were holding over. Subsequent to these appointments and after entries of the same had been made by the Secretary of State in his books to the effect that the term of each of said appointees was for four years and would expire on the same date, viz., December 14, 1926, the secretary of the dental board inquired of the attorney-general as to what were the terms of the then members of the board. In answer thereto an opinion was received by such officer which reviewed the appointments to the various terms from the passage of the act and the length of term each appointee was entitled to serve. Since that opinion was received, all appointments have been made in accordance with the views therein expressed, and all entries in the books of the Secretary of State, as appear from an exhibit attached to the briefs relative to appointments made subsequent thereto, show the definite period of the term. Therein the various members are identified with their respective offices, and the expiration dates given. Considering the conclusion we have reached in this case, we do not consider the construction put upon the act by the state officers is important, as we are of the opinion that the doctrine of contemporaneous construction need not be invoked to arrive at the true intent of the legislature as to the duration of the term. We will, therefore, not review the schedule referred to.

Petitioner in support of his contention that the term runs with the officer and not the office, cites us to the cases of *People* v. *Langdon*, 8 Cal. 1; *People* v. *Nickel*, 9 Cal. App. 783 [100 Pac. 1075], and other cases hereinafter referred to.

The cases cited declare the law to be that where there is no beginning or termination date provided for a definite term, the terms run with the incumbent. As stated by respondent, however, the Nickel case implies that the converse is also true; that is, if a particular date is established for either the beginning or ending of the term, then the term runs with the office and not the officer, for it is there said that when the terms of commencement and termination of

the term of an office as well as its duration are definitely fixed and provision is made for filling vacancies without any provision as to the duration of authority, such person is entitled to serve for the unexpired term. (See, also, 23 Am. & Eng. Ency. of Law, 2d ed., 418.) Whether a public officer has a fixed term of office can be determined only by reference to the law creating the office. But a term of office may be fixed by law, although not so stated in express terms by the statute, where such a result is properly inferred from the construction of the statute as a whole. (46 C. J., p. 946.) So, while no particular date for the beginning or ending of the term of any member of the board in question was definitely fixed by the statute, it does not follow that the term was fixed at a given period of time only.

The word "term", when used in reference to the tenure of office, means ordinarily a fixed and definite time. Statutes creating public offices usually but not always prescribe the limits of the terms provided for, fixing the dates at which they shall begin and end. Where a term for which an officer is to hold is fixed by law, the appointing power cannot enlarge or diminish it by issuing a commission in which a greater or less term is named.

The Governor who appointed petitioner was limited in his appointment to the duration of the term fixed by law and the naming of any period beyond such term is to be regarded as surplusage. (46 C. J., p. 965.) Since the term of an office is distinct from the tenure of an officer, the "term of office" is not affected by a holding over of an incumbent beyond the expiration of the term for which he was appointed, and a holding over does not change the length of the term, but merely shortens the term of the successor. Assuming, therefore, that the term to which petitioner was appointed began and ended on August 8th, his appointment on November 9, 1927, was but for an unexpired term.

The law is well established that a term begins not necessarily from the date of the appointment, but from the time fixed by the lawmakers for it to begin. (*People ex rel. Mason* v. *McClave*, 99 N. Y. 83. [1 N. E. 235].) Nor is it necessary that such a statutory provision expressly fix a date for the beginning or ending of a term. It is sufficient if the statute shows by its provisions that the term shall run with

the office. Such a result may properly be inferred from the construction of the statute as a whole. (46 C. J., p. 946; *Simpson* v. *Willard,* 14 S. C. 191; *Bruce* v. *Matlock,* 86 Ark. 555 [111 S. W. 990].) ■ The statute here in question does fix the date of the commencement of the terms as August 8, 1915, the effective date of the act, and the rotation in office or classification provided for therein in our opinion definitely fixes and establishes the end thereof.

The classification or provision for rotation in office in the statutory declaration that not more than the terms of two members shall expire in any one year has for its purpose the fixing of the term and it cannot be given effect except by a holding that the beginning and expiration dates of the terms are so fixed and that all terms run with the office. A contrary holding would result in a destruction of any effect of the provision.

As above stated, the time which a person holds over beyond his term of office is so much of an encroachment of the term of his successor. As the term to which petitioner was appointed expired August 8, 1931, his belated appointment on November 9, 1927, was not therefore for a full term of four years, and on and after August 8, 1931, petitioner was a mere holdover and subject to removal.

Counsel for petitioner has cited us to numerous cases which she claims support her contention that the term ran with petitioner and not with the office. A discussion of those cases would unduly enlarge this opinion and answer no useful purpose. Suffice it to say, the effect of a provision for rotation in office is not involved in any except one of them. It seems clear to us that the classification contained in the acts is a legislative declaration to have the term run with the office and not with the officer, and such classification or rotation definitely fixes the dates of the beginning and ending of the terms.

■ From what we have said it follows that the date of the beginning and ending of petitioner's term was August 8th and his successor was properly appointed on August 13, 1931. From August 8th and until Zimmerman qualified, petitioner was a mere holdover. Having been properly removed he ceased to be a member of the board and likewise ceased to be its secretary, and he is therefore not entitled to the claimed compensation.

Nor do we think this conclusion is in any manner altered or changed by section 377i of the Political Code. A disposition of this contention requires a brief review of the statutory provisions relating to the subject. Section 3 of the Dental Act requires that the secretary of the board shall be elected from its membership. (Stats. 1915, p. 698.) The original act of 1901 contained a similar provision. In 1929 the legislature, in amending the Political Code, passed an act which provided that the various boards of the Department of Professional and Vocational Standards, of which the dental board was one, might elect secretaries who might or might not be members of the appointing board. (Sec. 376i, Pol. Code; Stats. 1929, p. 595.) At the same session of the legislature the Dental Act was amended in certain particulars and section 3 thereof, requiring the secretary of the board to be a member thereof, was again carried into the act. (Stats. 1929, p. 1941.) This act was passed subsequent to the act amending the Political Code above referred to and there is nothing contained therein which referred to such prior act. In 1931 (Stats. 1931, p. 1285), the legislature, for the purposes of codification, repealed certain provisions relating to professional and vocational standards, among which was section 376i of the Political Code, and it re-enacted this same section, it being numbered as 377i. It seems to us manifest by re-enacting the provision in 1931 it was never intended in any manner to affect the provision of the Dental Act requiring its secretary to be a member of the board. Both sections may and should be construed together. The statutes creating the various boards brought into the Department of Professional and Vocational Standards and making provision for a secretary thereof are different, some requiring that the secretary be a member of the particular board appointing him, others providing that the secretary may or may not be a member. The section invoked by petitioner is a mere legislative recognition that a distinction exists which should be observed in the qualifications for the office of secretary under the various acts, and it was not designed to change or alter the provisions of the different acts with reference to the qualifications of the different secretaries. This conclusion is in keeping with the rules of statutory construction.

■ Every statute must be construed in connection with the whole system of which it forms a part and in the light of previous statutes upon the subject. Repeals by implication are not favored. A statute will not be construed as repealing prior acts on the same subject in the absence of words to that effect unless there is an irreconcilable repugnancy between them or unless the new law is evidently intended to supersede all prior acts relating to the legislation and to comprise in itself the sole and complete system of legislation upon the subject. So every new statute should be construed in connection with those already existing in relation to the same subject matter, and all should be made to harmonize and stand together if that can be done by any fair and reasonable interpretation.

So construed, we are of the opinion that the statute invoked was never intended to affect the provision of the Dental Act requiring that its secretary be a member of the board. ■ It is a principle that a general statute will not repeal by implication a former one which is special or which is limited in its application unless there is something in the general law that makes it manifest that the legislature contemplated and intended a repeal. (1 Lewis' Sutherland Stat. Const., sec. 274.)

From what we have said it follows that the writ should be and it is hereby denied.