KAMALA D. HARRIS Attorney General DIANE E. EISENBERG Deputy Attorney General
THE HONORABLE BILL EMMERSON, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city council remove its appointee to the Board of Trustees of a Mosquito and Vector Control District at the council's pleasure?
 CONCLUSION
A city council may not remove its appointee to the Board of Trustees of a Mosquito and Vector Control District at the council's pleasure. *Page 2 
 ANALYSIS
Since 1915, mosquito abatement and vector control districts ("mosquito abatement districts") have protected California communities against the threats of vector-borne diseases.[1]
In 2002, the Legislature enacted the Mosquito and Vector Control District Law[2] ("Mosquito District Law") in order "to create and continue a broad statutory authority for a class of special districts with the power to conduct effective programs for the surveillance, prevention, abatement, and control of mosquitoes and other vectors."[3]
Each mosquito abatement district is governed by a board of trustees consisting of at least five members.[4] The board is a legislative body charged with establishing policies for the operation of the district and providing for the faithful implementation of those policies by the employees of the district.[5] The composition of the board of trustees depends on whether the district is located in one or more than one county, and on whether the district consists of only unincorporated territory, or of both unincorporated and incorporated territory.[6] Trustees of mosquito abatement districts are appointed, not *Page 3 
elected.[7]
We are asked whether a city council that has appointed a person to the board of trustees of a mosquito abatement district may later remove that person from the board at the council's discretion — that is, before the expiration of the appointee's term and without specific statutory authority for the removal. We conclude that a city council may not remove its appointee to a mosquito abatement district board of trustees at the council's will or pleasure.[8]
Government Code section 1301 provides: "Every office, the term of which is not fixed by law, is held at the pleasure of the appointing power."[9] We have no hesitation in *Page 4 
determining for the purposes of this opinion that mosquito abatement district trustees are public officers.[10]
Whether a public office has a fixed term is determined by reference to the law creating the office.[11] For this purpose, the most relevant statute is section 2024, which provides in full:
 (a) Except as provided in Section 2023, [12]
the term of office for a member of the board of trustees shall be for a term of two or four years, at the discretion of the appointing authority. Terms of office commence at noon on the first Monday in January.
 (b) Any vacancy in the office of a member appointed to a board of *Page 5 
trustees shall be filled pursuant to Section 1779 of the Government Code. Any person appointed to fill a vacant office shall fill the balance of the unexpired term.
In interpreting section 2024, we employ well-established principles of statutory construction. As our Supreme Court has instructed:
 [O]ur first task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, [we] must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.[13]
The ordinary import of the words of section 2024(a) is not that the term of office of a trustee is generally subject to the appointing authority's discretion, but rather that the appointing authority may choose whether the term of a trustee is for two years or for four years. We are assisted to this conclusion by the longstanding rule of statutory construction commonly known as the "last antecedent rule," according to which "modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases" unless the context or the evident meaning of the statute requires a different construction.[14] Thus, the phrase "at the discretion of the appointing authority" refers to "a term of two or four years;" we find no reason to favor a different construction.[15] Indeed, reading section 2024(a) to mean that a *Page 6 
trustee serves at the will of the appointing authority requires that the phrase "for a term of two or four years" be accorded no significance and rendered a nullity. We consider such a reading to be untenable.
We further find that section 2024(a) plainly provides for a fixed, not an indeterminate, term of office. The disjunctive word "or" signifies that a term of two years and a term of four years are alternative possibilities, [16] but each alternative nevertheless constitutes a fixed term. Indeed, as our Supreme Court has observed, "[t]he word `term,' when used in reference to the tenure of office, means ordinarily a fixed and definite time."[17]
Our view that the term of a district trustee is fixed finds further support in the statutory context and legislative history of section 2024. Context is provided by section 2007(c), which states that a mosquito abatement district "shall be deemed an `independent special district,' as defined by Section 56044 of the Government Code." Government Code section 56044, in turn, defines the term "independent special district" to include "any special district[18] having a legislative body all of whose members are *Page 7 
elected by registered voters or landowners within the district, or whose members are appointed to fixed terms." Because the trustees of mosquito abatement districts are not elected, it follows that their appointments are for fixed terms. Sections 2024 and 2007 may thus be construed together to achieve a uniform and consistent legislative purpose.[19]
With regard to legislative history, we note that several legislative committee analyses of Senate Bill 1588 describe mosquito abatement districts, both under prior law[20] and under the new Mosquito District Law, as having "boards of trustees composed entirely of members who have been appointed for fixed terms by county boards of supervisors and city councils."[21]
Finally, it is clear that when the Legislature wishes to create an office without a fixed term, it knows how to do so. For example, the statute governing the duration of service of board members of pest abatement districts does not specify a term of office. Instead, it provides that "[t]he members of the district board shall hold office at the pleasure of the board of supervisors."[22] The chapters governing mosquito abatement districts and pest abatement districts are both part of Division 3 of the Health and Safety Code, titled "Pest Abatement."[23] "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."[24] We *Page 8 
therefore conclude that, pursuant to section 2024, a mosquito abatement district trustee serves for a fixed term of office, and not merely at the pleasure or discretion of the appointing authority.
Proponents of the view that a city council may remove its appointed trustee from a mosquito abatement district board cite Government Code section 36506 as an independent source of authority for such removal. Government Code section 36506 provides: "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees. Such officers and employees hold office during the pleasure of the city council." We find this statute to be inapposite, however, because we believe it is intended to apply to municipal officers and employees, and not to the officers of independent special districts, such as a mosquito abatement district.[25] We have found no cases in which Government Code section 36506 has been applied to members of the governing board of an independent special district. The differentiation between a mosquito abatement district and a city that has appointing authority is reflected in the Mosquito District Law's mandate that all trustees "shall represent the interests of the public as a whole and not solely the interests of the board of supervisors or the city council that appointed them."[26]
Even assuming that Government Code section 36506 encompassed a city's appointee to a mosquito abatement district board, we would still conclude that the appointee could not be removed at the city's pleasure. As applied to a mosquito abatement district trustee, Government Code section 36506 conflicts with section 2024, in that Government Code section 36506 provides for a term of office that is not fixed, whereas section 2024 provides for a fixed term. It is a well-established rule of statutory interpretation that when a specific and a general provision cannot be reconciled, the specific statute controls the more general statute.[27] The special statute relating to a *Page 9 
particular subject is treated as an exception to the general statute, and "will govern in respect to that subject," as against the general statute, "although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates."[28] Government Code section 36506 refers to a city's appointees in general, whereas section 2024 pertains specifically to the appointees to the board of a mosquito abatement district. Accordingly, regardless of the scope of Government Code section 36506, a city's appointed trustee to a mosquito abatement district board assumes a fixed term of office under the provisions of section 2024.
We do not suggest that there are no circumstances under which a mosquito abatement district trustee might be removed from, disqualified from, or deemed to forfeit the office. Section 2024(b) addresses vacancies on the board of trustees and specifies that any such vacancy "shall be filled pursuant to Section 1779 of the Government Code."[29] Government Code section 1770 enumerates events that effect a vacancy in an office, including the death or resignation of the incumbent, or, pursuant to subdivision (d), "[h]is or her removal from office." However, to say that a mosquito abatement district trustee may be removed or disqualified from office is not the same as saying that the appointing power may remove a trustee at its pleasure. As the court of appeal has stated: "A person holds office subject to conditions imposed by the state, and where cause for removal is provided by law, the person is deemed to have accepted the office on condition heor she could be removed for that cause and in the mannerprovided."[30] *Page 10 
Accordingly, we conclude that a city council may not remove its appointee to the Board of Trustees of a Mosquito and Vector Control District at the council's pleasure.
[1] Health and Safety Code § 2001(b)(4). Unless otherwise indicated, all further statutory references are to the Health and Safety Code.
[2] §§ 2000-2093 (2002 Stat. ch. 395 § 6 (Sen. 1588)).
[3] § 2001(c). A vector is "any animal capable of transmitting the causative agent of human disease or capable of producing human discomfort or injury, including, but not limited to, mosquitoes, flies, mites, ticks, other arthropods, and rodents and other vertebrates." § 2002(k).
[4] § 2020.
[5] Id.
[6] Section 2021 provides in full:
 Within 30 days after the effective date of the formation of a district, a board of trustees shall be appointed as follows:
 (a) In the case of a district that contains only unincorporated territory in a single county, the board of supervisors shall appoint five persons to the board of trustees.
 (b) In the case of a district that is located entirely within a single county and contains both incorporated territory and unincorporated territory, the board of supervisors may appoint one person to the board of trustees, and the city council of each city that is located in whole or in part within the district may appoint one person to the board of trustees. If those appointments result in a board of trustees with less than five trustees, the board of supervisors shall appoint enough additional persons to make a board of trustees of five members.
 (c) In the case of a district that contains only unincorporated territory in more than one county, the board of supervisors of each county may appoint one person to the board of trustees. If those appointments result in a board of trustees with less than five persons, the board of supervisors of the principal county shall appoint enough additional persons to make a board of trustees of five members.
 (d) In the case of a district that is located in two or more counties and contains both incorporated territory and unincorporated territory, the board of supervisors of each county may appoint one person to the board of trustees, and the city council of each city that is located in whole or part within the district may appoint one person to the board of trustees. If those appointments result in less than five persons, the board of supervisors of the principal county shall appoint enough additional persons to make a board of trustees of five members.
[7] See § 2021.
[8] Although the request for this opinion specifically asks only about whether a city council has the power to remove its appointee to a mosquito abatement district board at will, the conclusion presented herein also applies to a county board of supervisors in its capacity as an appointing authority.
[9] See also Brown v. Super. Ct.,15 Cal. 3d 52, 54, 57 (1975). While an appointing power's authority to remove an appointee is broad, it is not unlimited. For example, removal or dismissal based on the appointee's exercise of a constitutional or statutory right is improper. SeeBogacki v. Bd. of Supervisors, 5 Cal. 3d 771, 778 (1971);Ball v. City Council of City of Coachella,252 Cal. App. 2d 136, 141-143 (1967). Civil service employees are subject to removal only in accordance with civil service laws and regulations. See Hanley v. Murphy,40 Cal. 2d 572, 573 (1953).
[10] We have previously summarized the nature of a "public office" as "a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."68 Ops.Cal.Atty.Gen. 337, 342 (1985); see alsoSchaefer v. Super. Ct., 113 Cal. App. 2d 428, 432 (1952). The office of trustee of the board of a mosquito abatement district is created by statute (§ 2020), is continuing (§ 2024), and entails the protection of the public from vectors and vectorborne diseases (see §§ 2001, 2020, 2040). A mosquito abatement district board also exercises sovereign powers of the state. See Schaefer,113 Cal. App. 2d at 432-433 (listing various indicia of the exercise of state powers); §§ 2040 (district may take all necessary actions to prevent and abate vectorborne diseases), 2041 (district may sue and be sued, acquire and dispose of property, contract for supplies and services, and participate in land use planning), 2044 (district may enter into agreements with other public agencies), 2045 (district may contract with other public agencies to provide services). The authority to make policy and to act independently is also the hallmark of an officer, as opposed to an employee. See82 Ops.Cal.Atty.Gen. 83, 86 (1999). Section 2022, subdivision (e) requires that trustees exercise "their independent judgment," and section 2020 expressly distinguishes the board of trustees, which is charged with establishing policies for the operation of the district, from the employees of the district, who implement the board's policies.
[11] Boyd v. Huntington, 215 Cal. 473, 479 (1932);67 Ops.Cal.Atty.Gen. 405, 406 (1984).
[12] Section 2023 provides for staggered terms for the initial board of trustees of a mosquito abatement district formed on or after January 1, 2003.
[13] Dyna-Med, Inc. v. Fair Empl. Hous. Commn.,43 Cal. 3d 1379, 1386-1387 (1987) (citations omitted).
[14] Oliva v. Swoap,59 Cal. App. 3d 130, 138 (1976) (citations omitted); see alsoFurtado v. Sierra Community College,68 Cal. App. 4th 876, 881 (1998) ("qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"); White v. Co. of Sacramento,31 Cal. 3d 676, 680 (1982).
[15] Some courts have noted that the separation of the modifying phrase from the antecedents of the sentence by means of a comma may evince an intent that the modifying phrase apply to all antecedents rather than only to the immediately preceding antecedent.See e.g. White, 31 Cal. 3d at 680; In re Phelps,93 Cal. App. 4th 451, 456 (2001). However, this exception to the "last antecedent rule" typically comes into play when the antecedents consist of a series of syntactically equivalent terms.See e.g. In re Marriage of Walker,138 Cal. App. 4th 1408, 1421 (2006) (construing phrase set off by comma to refer both to duty to make full disclosure and to duty to provide equal access to records, rather than only to latter duty); see also People v. Steffens,62 Cal. App. 4th 1273, 1284-1286 (1998) (concluding that final clause of a statute applied both to alteration of access-card account information and to authorization of such alteration). The phrase "at the discretion of the appointing authority" in the first sentence of subdivision (a) of section 2024 is set off from the rest of the sentence by a comma. However, this sentence is grammatically unlike those to which the comma exception has been applied, and we find no evidence of legislative intent that the exception should apply where, as here, its application would render the whole sentence contradictory and incoherent.
[16] See Houge v. Ford, 44 Cal. 2d 706, 712 (1955) (stating that in "its ordinary sense, the function of the word `or' is to mark an alternative such as `either this or that'"); Nieto v. BlueShield of Cal. Life Health Ins. Co.,181 Cal. App. 4th 60, 82 (2010) (citing as a general principle that the Legislature's use of the disjunctive "or" indicates an intent to designate alternative ways of satisfying statutory requirements); 88 Ops.Cal.Atty.Gen. 196, 198 (2005) ("or" implies a disjunctive or alternative meaning).
[17] Boyd, 215 Cal. at 479.
[18] A district or special district is defined as "an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries." Govt. Code § 56036.
[19] See Isobe v. Unempl. Ins. Apps. Bd.,12 Cal. 3d 584, 591 (1974).
[20] Section 2245, which was repealed by Senate 1588, provided in relevant part: "The first term of any member shall not exceed two years. Each subsequent consecutive reappointment, if any, may be for a term of two or four years, at the discretion of the appointing power."
[21] Sen. Loc. Govt. Comm., Analysis of Sen. 1588, 2001-2002 Reg. Sess. 5 (April 24, 2002); Assembly Comm. on Loc. Govt., Analysis of Sen. 1588, 2001-2002 Reg. Sess. 4 (June 19, 2002) (emphasis added).
[22] § 2851.
[23] The Mosquito District Law is contained in Division 3, Chapter 1. The law governing pest abatement districts (§§ 2800 et seq.) is contained in Division 3, Chapter 8. Chapter 8 "is supplemental to any other provision of law relating to the abatement of pests or nuisances." § 2801.
[24] People v. Trevino, 26 Cal. 4th 237, 242 (2001);People v. Franz, 88 Cal. App. 4th 1426, 1440 (2001) (stating that it is "a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes") (citations omitted).
[25] See e.g. Cerini v. City of Cloverdale,191 Cal. App. 3d 1471, 1477-1478 (1987) ("section 36506 grants to the Cloverdale city council the power to terminate appointed officers or employees of the city") (emphasis added);Ellis v. City Council of City of Burlingame,222 Cal. App. 2d 490, 499 (1963) (Government Code sections 34856 and 36506 "provide that both the city manager and the city council shall have the power to dismiss appointive officers and employees of the city") (emphasis added).
[26] § 2022(e).
[27] See Code Civ. Proc. § 1859 ("[i]n the construction of a statute . . . when a general and particular provision are inconsistent, the latter is paramount to the former");People v. Super. Ct. (Jimenez), 28 Cal. 4th 798, 808 (2002);Woods v. Young, 53 Cal. 3d 315, 325 (1991); Friends of theLibrary of Monterey Park v. City of Monterey Park,211 Cal. App. 3d 358, 370-371 (1989) (detailed regulatory provisions of Municipal Libraries Act prevail over more general provision of Government Code section authorizing city to own and operate public libraries); 87 Ops.Cal.Atty.Gen. 148, 152 (2004).
[28] S.F. Taxpayers Assn. v. Bd. of Supervisors,2 Cal. 4th 571, 577 (1992) (quoting Rose v. State,19 Cal. 2d 713, 723-724 (1942)).
[29] Government Code section 1779 provides in full:
 A vacancy on any appointed governing board of a special district shall be filled by the appointing authority within 90 days immediately subsequent to its occurrence. If no action is taken for a period of 90 days immediately subsequent to a vacancy on such a board, the board of supervisors of the county in which the larger portion of the district is located shall have authority to fill the vacancy by appointment.
[30] Lubin v. Wilson,232 Cal. App. 3d 1422, 1429-1430 (1991) (emphasis added). Possible grounds for removal from an office are beyond the scope of this opinion.